unnecessary to decide that the asking of such a question is a legal error which calls for the reversal of a judgment, but it should be understood that such questions are dangerous, and, when asked without good reason, may be very unprofitable to the party who asks them. While in this case it is clear that the verdict is unsupported by the evidence, a new trial under the circumstances is not to be regretted.

The verdict is against the evidence, and is not fairly sustained by it, and the order should therefore be reversed, and a new trial ordered, with costs to the appellant to abide the event. It is therefore unnecessary to consider several rulings in the case which otherwise might require serious consideration.

CHESTER, J., concurs. SMITH and COCHRANE, JJ., concur in result. PARKER, P. J., not voting.

---

(113 App. Div. 133)

### GARDNER v. SCHENECTADY RY. CO.

(Supreme Court, Appellate Division, Third Department. May 2, 1906.)

1. EVIDENCE—ADMISSIONS BY AGENT OR EMPLOYÉ—NEGLIGENCE.

In an action against an electric company for death of its street lamp trimmer, killed by an electric shock while in the performance of his duty, testimony of a witness that a former superintendent of the company had condemned the hoods of the lamp, and that he heard him say that the hoods were no good, that they were not safe, is not admissible against the company.

[Ed. Note.—For cases in point, see vol. 20, Cent. Dig. Evidence, § 908.]

2. MASTER AND SERVANT—INJURIES TO SERVANT—SUFFICIENCY OF EVIDENCE.

Evidence in an action against an employer for death of an employé, killed while trimming an electric lamp in the course of his duty, held insufficient to sustain a verdict against defendant.

Chester, J., dissenting

Appeal from Trial Term.

Action by Bridget A. Gardner, administratrix of Joseph P. Gardner, deceased, against the Schenectady Railway Company. From an adverse judgment and from an order denying a motion for new trial, defendant appeals. Reversed, and new trial granted.

This is an appeal from a judgment in favor of the plaintiff, and from an order denying the defendant's motion for a new trial upon the minutes. The plaintiff's intestate was killed by a current of electricity passing through his body while he was employed as an electrical street lamp trimmer by the defendant. The duties of a trimmer were (1) to trim the lamps during the day when the current was off, and (2) to go around nightly and see if the lamps are burning, and, if not, try to make them burn while the current is on. The deceased was engaged in trimming a lamp about 7 o'clock p. m., October 20, 1904, while the current was on, and was killed by a current of electricity which apparently passed through a hole of the right-hand thumb of the rubber glove he was wearing at the time. The action is under the employers' liability act, and the grounds of negligence against the defendant are that the lamp and hood and appliances connecting therewith were of an old construction, defective, and not properly insulated, that the glove furnished was defective, and that the decedent was not given proper instructions.

Argued before PARKER, P. J., and SMITH, CHESTER, KELLOGG, and COCHRANE, JJ.

Daniel Naylor, Jr., and Edward C. Whitmyer, for appellant.
William Dewey Loucks, for respondent.

PER CURIAM. The evidence is clear that the intestate was employed as a skilled workman, familiar with the kind of business, and that he should either have worn rubber boots, or rubbers, or used the insulated stool, all of which were present in his wagon with him at the time. He did not wear any rubbers, or rubber boots, and there is no claim that he had the insulated stool in use. A witness claims that he did not use the rubber boots or insulated stool when instructing the decedent, but admits that he told him that he ought to take the stool with him as that was what it was for. A witness, in trimming a lamp under like circumstances, where the new style of hood was used, suffered a shock because he forgot to turn off one of the switches. It does not appear here whether this injury was caused by the failure of the decedent to turn off one or both of the switches, or whether the wire leaked or what caused the injury. The ground under which the decedent was working was more or less damp at the time. There is not sufficient evidence of any negligence on the part of the defendant.

Some evidence tends to show that this glove may have been in use for two months previous, and that a glove was good for a week, several weeks, a month, two months, or six months, depending upon the circumstances and the manner of its use. There is no proof of any defect in the glove prior to the accident, and for many days previous to the accident it was in the custody and control of the decedent, and it is quite clear that in fact a new pair of gloves was furnished him when he began work a few weeks before the accident. There is no proof of any defects in the hood. No other defect is claimed so far as the line itself was concerned. The metallic tag could only cause connection from the hood to the lamp, and its presence was immaterial if the hood was a proper one and the switch in proper order. It is true it was an old style hood, but one in general use at the time. The only evidence tending to show any defect in the hood was the statement of one witness that a previous superintendent had condemned the hoods, and that at some time in 1900 he heard that superintendent making a statement that the hoods were no good, that they were not safe. This was not evidence against the defendant. It was received over the defendant's objection and exception.

Therefore, for the reason that the verdict is not fairly sustained by the evidence, and for the erroneous admission of the declarations of the former superintendent, the judgment and order should be reversed and a new trial granted, with costs to the appellant to abide the event.

COCHRANE, J., concurs in result. PARKER, P. J., not voting. CHESTER, J., dissenting.